Steven C. Hathaway  
P.O. Box 2147  
Bellingham, WA 98227  
(360) 676-0529  

Honorable Thomas T. Glover  
Chapter 13  

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

In re:  ) No. 09-16685  
David Frederick Travis,  )  
    *Debtor*,  ) Adversary No.  
_____ )  
                      ) COMPLAINT FOR DECLARATORY  
David Frederick Travis,  ) JUDGMENT AND OTHER RELIEF  
    *Plaintiff*,  )  
                      )  
       vs.  )  
                      )  
America's Servicing Company and  )  
Deutsche Bank,  )  
    *Defendants*.  )  
_____ )  

**COMES NOW** the debtor, David Frederick Travis, by and through his attorney Steven C. Hathaway, and hereby states the following cause of action against defendants America's Servicing Company and Deutsche Bank.

<u>JURISDICTION & PARTIES</u>

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is an action seeking a declaratory judgment under 28 U.S.C. §§2201 *et seq* to determine the various rights and responsibilities of the debtor and the defendants under the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et seq., Washington's mortgage servicing statute, RCW 19.1458.010 et seq., the Home Affordable Modification Program "HAMP". This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O) and 28 U.S.C. § 1409.

COMPLAINT TO FOR DECLARATORY  
JUDGMENT AND OTHER RELIEF

2. David Frederick Travis, debtor/plaintiff, filed a voluntary petition under Chapter 13 of Title 11 of the United States Code on or about July 8, 2009.

3. Defendant America's Servicing Company, on information and belief, is a corporation licensed to do business in the State of Washington.

4. Defendant Deutsche Bank, on information and belief, is a corporation licensed to do business in the State of Washington.

## FACTUAL ALLEGATIONS

5. The debtor owns a home located at 125 East King Tut Road in Lynden, Washington (hereinafter, "the home"). The debtor and his former wife purchased the home on April 28, 2000 for $135,000.00. The home was purchased to provide the three teenage children with a stable and safe place to grow up. One week after the home was purchased the debtor's former wife abandoned the family leaving the debtor with three teenage children to raise on his own. The home is located on 7/8 of an acre, has a two car garage, a carport, two large outbuildings and a sauna. The debtor has valued the home at $275,000.00 on his schedules. The debtor now resides in the home with his 17 year old daughter for whom he receives $100.00 per month in child support.

6. For the past 15 years, Mr. Travis has been employed by Alcoa Intalco Works which is primary aluminum smelter facility located in Ferndale, Washington. Mr. Travis works full-time as an electrician assistant earning $21.90 per hour. He is usually able to work ten hours per week of overtime during which he earns $32.85 per hour.

7. In 2006 the debtor called a mortgage broker to inquire about getting some cash out of the home for some much needed repairs. The mortgage broker set him up with an adjustable rate mortgage through WMC Mortgage. On or about July 13, 2006 the debtor executed and delivered a note in favor of WMC Mortgage Corporation with an original principal amount of $192,000.00 secured by a deed of trust on his home. The debtor was enticed into the adjustable rate mortgage by the artificially low initial payments of $1,509.00 per month exclusive of taxes and insurance which the debtor was required to pay on his own. The minimum interest rate on the loan is 9.375%.

8. The note and deed of trust are apparently now held by Deutsche Bank National Trust

Company, as Trustee for HSI Asset Securitization Corporation Mortgage pass-through Certificate 2006 HE1 (hereinafter "Deutsche Bank").  America's Servicing Company (hereinafter "ASC") is the mortgage loan servicer for Deutsche Bank.

9. In late 2008 and early 2009 the debtor's employer stopped allowing its employees to work overtime which led to a large decrease in the debtor's income.  The debtor fell behind on his property taxes which were added to the loan payment and the interest rate on the loan adjusted.  The debtor's loan payments increased to approximately $2,500.00 per month until his homeowners insurance was cancelled due to a defective roof which led to forced placed insurance and another increase in the payment to approximately $2,800.00 per month.

10. In December 2008, after his hours were cut, and knowing that the payments on his mortgage were scheduled to reset, the debtor contacted ASC to inquire about a loan modification.  Over the next couple of months, the debtor kept calling and spoke to a different person each time.  On March 9, 2009, and pursuant to ASC's request, the debtor submitted a loan modification application with a hardship letter and a financial worksheet.  After submission of the requested documentation the debtor made regular calls to inquire about the status of the loan modification request, again speaking to a different person each time he called.  The debtor finally reached someone who told him that there was going to be a modification on his loan.

11. On or about March 27, 2009 the debtor received a Notice of Trustee's Sale which identified a sale date of July 6, 2009.  After receiving the notice of the sale the debtor continued to contact his servicer to inquire as to the status of his loan modification application.  Once again, the debtor was never able to speak with the same person twice and was always told no decision had yet been made.  A few days before the scheduled sale date the debtor was advised by telephone that his loan modification application was denied.

12. On July 8, 2009 the debtor filed for Chapter 13 bankruptcy protection.  The debtor's Chapter 13 plan provides for adequate protection payments to ASC in the amount of $1,074.00 per month.  To date, the debtor has paid $18,351.25 into his plan.  The Court has authorized the Chapter 13 Trustee to pay the balance on hand, less administrative costs and debtor attorney fees, and on-going monthly payments to ASC on behalf of Deutsch Bank.

13. After his bankruptcy was filed, the debtor was advised by the mortgage servicer that it

COMPLAINT TO FOR DECLARATORY
JUDGMENT AND OTHER RELIEF                     - 3 -

had not received a loan modification request. Debtor's counsel thus requested another loan modification application from Deutsche Bank's counsel. Debtor's counsel received the new application via e-mail on October 27, 2009. The debtor immediately completed and submitted the new loan modification application.

14. On January 13, 2010 the debtor's attorney received an e-mail from Deutsch Bank's counsel stating that there was no review currently pending for a loan modification and requesting another copy of the submitted application so that it could be forwarded to his client. A copy of the new application which had been submitted in October was forwarded to Deutsche Bank's counsel.

15. On January 27, 2010, the debtor's attorney received an acknowledgment from Stephanie Clemens (of Wells Fargo Bank N.A.) that America's Servicing Company (ACS), which is a division of Wells Fargo, had received the modification application but stated she now needed written authorization to allow her to communicate directly with the debtor. The authorization was faxed and e-mailed to Ms. Clemens on the same day.

16. On January 28, 2010, Ms. Clemens requested that the debtor submit a hardship letter and financial worksheet. Those items were forwarded to her on the same day. Ms. Clemens then requested an updated hardship letter and financial worksheet. Those items were forwarded on February 4, 2010 via e-mail and certified mail.

17. On February 5, 2010, debtor's counsel received an email from Deutsch Bank's counsel stating that his client had not yet been provided with the necessary documents, including the hardship letter and financial worksheet.

18. On February 11, 2010, debtor's counsel received a letter from ASC advising that they were declining the modification because the necessary documents had not been provided for review.

19. Throughout the loan modification application process the debtor has continually received contrary information from the servicer. At one point, he was advised that his modification would be approved, then he was advised he was not approved, then he was told he was ineligible because of his car payment. The debtor surrendered his car and was then told that he would not qualify even if the interest rate on the modified loan was at 0%. The debtor has

COMPLAINT TO FOR DECLARATORY
JUDGMENT AND OTHER RELIEF            - 4 -

submitted a Financial Worksheet that shows that by having the interest rate reduced to just 4.5% he would be able to make regular payments and still have funds left over for emergencies and other financial commitments.

20. Deutsche Bank filed a motion for relief from stay in December 2009. In support of its motion, Deutsche Bank indicated it sought relief in "order to . . provide and enter into any potential forbearance agreement, loan modification agreement . . . and to contact Debtor via telephone or written correspondence to offer such an agreement . . ." Counsel for the debtor has provided written authorization to Deutsche Bank's loan servicer to communicate directly with Debtor in this regard. To date, however, Deutsche Bank and its loan servicer have done nothing to take any steps to facilitate such modification. This is obvious from the February 11, 2010 letter that readily demonstrates that debtor's request for modification was never even considered. The continued requests for duplicate information and the unwillingness to consider that information is indicative of bad faith.

21. According to Deutsche Bank's proof of claim the outstanding balance due on the note as of the filing is approximately $194,000.00. The pre-petition arrears, including payments, late charges, escrow advances and accrued fees and costs are $29,208.65 and the current on-going monthly payment is $2,027.64 which will reduce to $1,940.29 as of August 1, 2009.

22. The debtor's deed of trust provides that it shall be governed by federal law and the law of the jurisdiction where the property is located. "All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable law. See deed of trust.

23. The debtor's deed of trust also provides that it is subject to "RESPA" (the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor regulation that governs the same subject matter. "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA. See deed of trust.

24. In Washington's mortgage servicing statute the Washington State Legislature has deemed the ability of individuals to obtain information relating to their residential mortgage

COMPLAINT TO FOR DECLARATORY
JUDGMENT AND OTHER RELIEF           - 5 -

loans as vital to the financial needs of mortgagors in Washington, that mortgagors may experience difficulty in obtaining various mortgage loan information and that the legitimate interests of mortgagors and mortgage loan servicers are served when continued mortgagor access to information regarding the mortgage loan is promoted. RCW 19.1458.010 et seq.

25. On February 18, 2009, President Obama announced the Homeowner Affordability and Stability Plan to help up to 7 to 9 million families restructure or refinance their mortgages to avoid foreclosure. As part of this plan, the Treasury Department (Treasury) announced a national modification program aimed at helping 3 to 4 million at-risk homeowners – both those who are in default and those who are at imminent risk of default – by reducing monthly payments to sustainable levels. <u>HAMP Supplemental Directive 09-01</u>, April 6, 2009 ("Introduction of the Home Affordable Modification Program").

26. Under HAMP, servicers apply a uniform loan modification process to provide eligible borrowers with sustainable monthly payments for their first lien mortgage loans. While HAMP program guidelines are intended to reach a broad range of at-risk borrowers, there will be loans that cannot be approved for a HAMP Trial Period Plan (Trial Period Plan) or official HAMP modification, and there will be borrowers who choose not to accept a Trial Period Plan or official HAMP modification offer. In such cases, borrowers <u>must be informed in writing of the reasoning for servicer determinations regarding program eligibility</u>. <u>HAMP Supplemental Directive 09-08</u>, November 3, 2009 ("Borrower Notices"). Emphasis added.

27. The HAMP reflects usual and customary industry standards for mortgage loan modifications contained in typical servicing agreements, including pooling and servicing agreements (PSAs) governing private label securitizations. As detailed in the Servicer Participation Agreement, participating servicers are required to consider <u>all</u> eligible mortgage loans unless prohibited by the rules of the applicable PSA and/or other investor servicing agreements. Participating servicers are required to use reasonable efforts to remove any prohibitions and obtain waivers or approvals from all necessary parties in order to carry out any modification under the HAMP. <u>HAMP Supplemental Directive 09-08</u>, November 3, 2009

28. <u>Requesting Consideration for Modification</u>. A servicer may evaluate a borrower for HAMP only after the servicer receives the following documents, subsequently referred to as the

COMPLAINT TO FOR DECLARATORY JUDGMENT AND OTHER RELIEF - 6 -

"Initial Package". The Initial Package includes (1) Request for Modification and Affidavit (RMA) Form, (2) IRS Form 4506-T or 4506T-EZ, and (3) Evidence of Income. <u>HAMP Supplemental Directive 10-01</u>, January 28, 2010.

29. <u>Acknowledgment and Review of Initial Package</u>. <u>Within 10 business days</u> following receipt of an Initial Package, the servicer must acknowledge in writing the borrower's request for HAMP participation by sending the borrower confirmation that the Initial Package was received, and a description of the servicer's evaluation process and timeline. <u>HAMP Supplemental Directive 10-01</u>, January 28, 2010.

30. <u>Within 30 calendar days</u> from the date an Initial Package is received, the servicer must review the documentation provided by the borrower for completeness. If the documentation is incomplete, the servicer must send the borrower an Incomplete Information Notice in accordance with the guidance set forth in the "Incomplete Information Notice" section below. <u>HAMP Supplemental Directive 10-01</u>, January 28, 2010.

31. If the borrower's documentation is complete, the servicer must either (1) Send the borrower a Trial Period Plan Notice; or (2) Make a determination that the borrower is not eligible for HAMP and communicate this determination to the borrower in accordance with the Borrower Notice guidance provided in Supplemental Directive 09-08. <u>HAMP Supplemental Directive 10-01</u>, January 28, 2010.

32. <u>Incomplete Information Notice</u>. If the servicer receives an incomplete Initial Package or needs additional documentation to verify the borrower's eligibility and income, the servicer must send the borrower an Incomplete Information Notice that lists the additional required verification documentation. The Incomplete Information Notice must include a specific date by which the documentation must be received, which must be no less than 30 calendar days from the date of the notice. If the documents are not received by the date specified in the notice, the servicer must make one additional attempt to contact the borrower in writing regarding the incomplete documents. This additional notice must include the specific date by which the documentation must be received, which must be no less than 15 calendar days from the date of the second notice. If a borrower is unresponsive to these requests for documentation the servicer may discontinue document collection efforts and determine the borrower to be ineligible for

HAMP. If the borrower is determined to be ineligible for HAMP, the servicer must communicate this determination to the borrower in accordance with the Borrower Notice guidance provided in Supplemental Directive 09-08. <u>HAMP Supplemental Directive 10-01</u>, January 28, 2010.

33. <u>Trial Period Plan Approval</u>. <u>Within 30 calendar days</u> following receipt of an Initial Package or complete verification documents, the servicer must complete its verification and evaluate the borrower's eligibility for HAMP and, if the borrower is qualified, send the borrower a Trial Period Plan Notice. If the borrower is determined to be ineligible for HAMP, the servicer must communicate this determination to the borrower in accordance with the Borrower Notice guidance provided in Supplemental Directive 09-08. Servicers are reminded that Supplemental Directive 09-01 prohibits servicers from initiating a new foreclosure action while a borrower is in a trial period plan. <u>HAMP Supplemental Directive 10-01</u>, January 28, 2010.

34. <u>Consideration for Alternative Loss Mitigation Options</u>. When a borrower is determined to be ineligible for a HAMP modification, the servicer is required to consider that borrower for all other available loss mitigation options, including but not limited to refinance, forbearance, non-HAMP modifications and, to the extent a borrower does not qualify for a home retention alternative, Home Affordable Foreclosure Alternatives (short sales or deeds in lieu of foreclosure) under Supplemental Directive 09-09. As required in Supplemental Directive 09-08, available loss mitigation options should be described in the Non-Approval Notice. <u>HAMP Supplemental Directive 10-01</u>, January 28, 2010.

35. <u>Continued Eligibility for HAMP</u>. A borrower who has been evaluated for HAMP but does not meet the minimum eligibility criteria described in the "HAMP Eligibility" section of Supplemental Directive 09-01 or who meets the minimum eligibility criteria but is not qualified for HAMP by virtue of a negative NPV result, excessive forbearance or other financial reason, may request reconsideration for HAMP at a future time if they experience a change in circumstance. <u>HAMP Supplemental Directive 10-01</u>, January 28, 2010.

36. A servicer must send a Borrower Notice to every borrower that has been evaluated for HAMP but is not offered a Trial Period Plan, is not offered an official HAMP modification, or is at risk of losing eligibility for HAMP because they have failed to provide required financial documentation. The written notices must comply with all laws, rules and regulations including

but not limited to, the Equal Credit Opportunity Act, when applicable to the transaction. <u>HAMP Supplemental Directive 09-08</u>, November 3, 2009 "Home Affordable Modification Program – Borrower Notices".

## FIRST CAUSE OF ACTION: DECLARATORY JUDGMENT

37. Paragraphs 1-36 are incorporated herein.

38. An actual controversy has arisen and now exists between the debtor and the defendants regarding the debtor's right to right to receive a HAMP modification, and if not the defendants are required to consider the debtor for all other available loss mitigation options, including but not limited to refinance, forbearance, non-HAMP modifications and, to the extent he does not qualify for a home retention alternative.

39. Plaintiff/debtor desires a judicial determination concerning the debtor's right to right to receive a HAMP modification, and if not that the defendants are required to consider the debtor for all other available loss mitigation options, including but not limited to refinance, forbearance, non-HAMP modifications and, to the extent he does not qualify for a home retention alternative.

40. A judicial declaration is necessary and appropriate at this time under all the circumstances.

## PRAYER FOR RELIEF

Based on the foregoing, the debtor/plaintiff prays as follows:

1. For a judgment that the debtor has a right to receive meaningful forbearance, mortgage modification and other foreclosure prevention loan services from the defendants pursuant to and in accordance with the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et seq., Washington's mortgage servicing statute, RCW 19.1458.010 et seq., and the Home Affordable Modification Program "HAMP".

2. For a judgment setting forth specific deadlines for the exchange of information.

3. For a judgment that the defendants shall provide the Court with a written report concerning the procedures utilized and the final determination of the debtor's eligibility for a HAMP modification and other available loss mitigation options, including but not limited to refinance, forbearance, non-HAMP modifications and other home retention alternatives.

COMPLAINT TO FOR DECLARATORY
JUDGMENT AND OTHER RELIEF              - 9 -

4. For any other such relief as the Court finds appropriate and just.

Dated: 07/30/2010     */s/ Steven C. Hathaway*
                                 Steven C. Hathaway, Attorney for Debtor/Plaintiff